## A. W. ACHESON v. M. H. STEVENSON ET AL.

APPEALS BY PLAINTIFF AND DEFENDANTS FROM THE COURT
OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 20, 1891—Decided January 4, 1892.

(*a*) A deed conveyed a town lot, adjoining other lands of the grantor,
with the habendum: "To have and to hold the said premises, . . . .
without, however, the right to drill or mine for petroleum, carbon oil,
or natural gas, which right is not intended to be conveyed, but is for-
bidden to both parties hereto." The grantee afterward drilled a pro-
ducing oil well on the lot conveyed.

(*b*) On a bill filed by the grantor for an injunction, an account, etc., the
master reported a finding that the plaintiff had failed to establish his
material averments, (1) that the title to the oil in the lot conveyed was
in himself, and (2) that the purpose of the provision was to protect his
unsold lands from being drained by operations for oil on lots sold;
approved:

1. In such case, the plaintiff was entitled to an injunction restraining the
defendant from operations for oil on the lot conveyed, in violation of
the restrictive covenant and rendering the neighborhood less desirable
for residences; but he was not entitled to an account as for damages
measured by the amount of oil obtained by the defendant in his opera-
tions.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and
MITCHELL, JJ.

Nos. 123, 270 October Term 1891, Sup. Ct.; court below,
No. 606, C. P. in Equity.

On August 15, 1889, A. W. Acheson filed a bill in equity
against M. H. Stevenson, Adolph Schmitz, Effie B. Schmitz,
John Burns and James M. Hughes. A motion for a preliminary
injunction having been heard, the injunction was refused on
August 28, 1891; decree affirmed: Acheson v. Stevenson, 130
Pa. 633.

The bill filed, as amended, averred in substance as follows:

1. That, on and prior to June 21, 1887, the plaintiff was
seised in fee of a tract of about twenty acres of land in Frank-
lin township, Washington county, adjoining land of Dr. F. J.
LeMoyne, and others; that, in the fall of 1886, he had a part

of said land laid out in town lots designated on the plan as " Acheson Addition to Washington ; " that the plan did not embrace a tract of about four or five acres lying back of the plaintiff's present dwelling-house, nor the old homestead where Dr. Hamilton resided, nor a tract of about three acres lying next to the lands of Dr. Stevenson and Richard Fitzwilliams. That, since laying out said plan, the plaintiff had sold thirteen lots, the purchasers in each case taking their title with a stipulation or provision that no oil or gas wells should be drilled upon the land conveyed.

2. That, on June 21, 1887, the plaintiff sold and conveyed one of said lots to Mrs. Effie B. Schmitz, fronting sixty feet on Prospect Avenue and extending back one hundred and ninety-eight feet to a private alley. This conveyance contained this restriction : " Without, however, the right to drill or mine for petroleum, rock oil, carbon oil, or natural gas, which right is not intended to be conveyed, but is forbidden to both parties hereto ; " and that the said provision was inserted for the purpose of protecting the remaining lands of the plaintiff from being drained by operations upon small lots of ground sold by him, in case oil or gas should be found upon said land.

3. That, after the execution and delivery of the deed to Mrs. Effie B. Schmitz, the plaintiff executed and delivered to Gibson & Giles an oil and gas lease on an out-lot containing about four or five acres, near the lot conveyed to Mrs. Schmitz, upon which the said Gibson & Giles had completed an oil well which was producing oil in large quantities.

4. That the defendants, in violation of the provision or condition in the deed to Mrs. Effie B. Schmitz, and of the rights, title and property of the plaintiff, had commenced operations, and were drilling a well with the avowed intention of taking and appropriating to their own use all the oil and gas found in the said premises, in defiance of the right and title of the plaintiff thereto, and against his protest.

5. That the provision recited in the second paragraph of the bill, contained in said deed, was of great value to the plaintiff ; and if the defendants were permitted to continue their operations, and produce and appropriate to their own use the oil found upon the said lot, they would greatly decrease the production of the wells upon the plaintiff's other land, and do great and irreparable damage to the plaintiff's rights and property.

The prayers of the bill were: (1) That the defendants be required to make full, true and perfect answer to the bill. (2) That the defendants be required to make full disclosure of all parties, etc. (3) For an injunction restraining the defendants, etc., from further operations in drilling or mining for oil or gas, etc., on the said lot, etc. (4) For an account. (5) For other and further relief.

The defendants' answer, filed on December 12, 1889, and amended, in so far as the allegations of the bill were not admitted, averred:

1. That the plan of lots called Acheson Addition to Washington, did embrace the old homestead, where Dr. Hamilton resided, and also that part of the plaintiff's land lying along the upper side of the Fitzwilliams road, adjoining property of Dr. Ross Stevenson on the south; that the purchasers of lots in the addition accepted their deeds with a provision against drilling for oil or gas, through the representations of the plaintiff that such provision was for the mutual benefit of himself and purchasers of lots, in securing a quiet place for residences, and that his sole purpose was to prevent the drilling of oil or gas wells in said addition, or in the immediate neighborhood, to the end that this purpose might be secured.

2. That the clause, "without, however, the right to drill, etc.," was inserted in the deed of Mrs. Effie B. Schmitz, without the knowledge or consent of either Prof. Schmitz, or his wife; that the deed was accepted with that provision in it, upon the representations of the plaintiff that he would not have any drilling of oil or gas wells, either on the addition or in the immediate neighborhood, that said clause would be inserted in all other deeds for lots sold in the addition, and that the clause was for the mutual benefit of all lotowners in the addition; denying that it was agreed that said clause was inserted to protect plaintiff's remaining lands from drainage, or for any other purpose than to secure the peace and quiet of the neighborhood as a place of residence.

3. That, at the time of bringing this suit, the plaintiff had not only caused the Gibson & Giles well to be drilled within about one hundred feet of said addition, in violation of his representations, made to Prof. Schmitz and other purchasers, and to the great prejudice of their rights, but was preparing to drill two other wells on the addition itself.

4. That the operations of the defendants were not in violation of any right belonging to the plaintiff, as stated in the fifth paragraph of the bill; on the contrary, their purpose in drilling said well, was to obtain oil or gas which the plaintiff, for a valuable consideration, sold and conveyed by the deed to Mrs. Effie B. Schmitz; and that the plaintiff had no right, title, interest or property in said oil or gas whatever.

5. That it was never proposed by plaintiff, or agreed by either Prof. Schmitz or his wife, that the clause in the Schmitz deed was inserted for the purpose of protecting plaintiff's other lands from drainage, or of reserving to him any right or property in the oil or gas under the Schmitz lot; but, on the contrary, the plaintiff represented said clause to be for a single purpose, to wit, the preservation of his addition and its immediate neighborhood, for a quiet place of residence.

Issue having been joined, the cause was referred to *Mr. H. J. Vankirk,* as examiner and master.

On August 4, 1890, the master filed a report, in which, ruling upon questions of evidence raised, he held in effect as follows: That the purpose in the mind of the plaintiff for inserting the restriction, not communicated to Mrs. Schmitz or her husband before or at the time of the acceptance of her deed, could in no way affect her rights under her deed: Thomas v. Loose, 114 Pa. 35; Spencer v. Colt, 89 Pa. 314; that the part of the answer seeking to avoid the effect of the written contract embodied in the deed to Mrs. Schmitz, altering its terms, etc., was not responsive to the bill, but by way of avoidance or defence, and must therefore be made out by the testimony of two witnesses, or of one witness corroborated by circumstances equivalent to another: Thomas v. Loose, 114 Pa. 35; Kenney's App., 22 W. N. 89; Jackson v. Payne, 114 Pa. 67; Spencer v. Colt, 89 Pa. 314; that the purpose of the covenant in the deed to Mrs. Schmitz was to be determined from the language in the deed itself; and not by declarations made by the grantor to third parties, with reference to the purpose of the covenant in their deeds: Taylor on Ev., § 317; Greenl. on Ev., § 52; McWilliams v. Martin, 12 S. & R. 269; Campbell v. McClenachan, 6 S. & R. 171; that in equity, husband and wife are equal to but one witness: Sower v. Weaver,

Statement of Facts.

78 Pa. 443; * and that, where parol evidence is admissible to contradict or vary a written instrument, if there be but the unsupported oath of one of the parties to the instrument on the one side, and the opposing and contradictory oath of the other party together with the words of the instrument on the other side, such unsupported oath, whatever the form of the procedure, is not sufficient to justify the reformation of the instrument, and in such case the evidence should not be submitted to the jury: Jackson v. Payne, 114 Pa. 67; Phillips v. Meily, 106 Pa. 536; Juniata Ass'n v. Hetzel, 103 Pa. 509; Cullmans v. Lindsay, 114 Pa. 170; Spencer v. Colt, 89 Pa. 314.

As summarized by the court below, in the opinion, infra, the master then found the following facts:

1. In 1886, the plaintiff, being the owner of about twenty acres of land, laid out part of it in building lots; that the lots laid out numbered forty-three, and he had sold fourteen, one of which was No. 6, the lot conveyed to Mrs. Effie B. Schmitz.

2. That "the plaintiff made it a general condition in the sale of lots in the Acheson addition, when put upon the market, that no oil or gas wells should be drilled on any of the lots for sale in the addition, either by himself or the lot owners."

3. That the drilling of oil wells on the Acheson addition made it less desirable as a place of residence, and would depreciate the value of the lots during the continuance of the wells.

4. That the plaintiff did not reserve or except the oil and gas in and under the lot conveyed to Mrs. Effie B. Schmitz, but it was conveyed to her.

5. That the restriction was not inserted in the deed to Mrs. Schmitz for the purpose of protecting the plaintiff's other lands from drainage.

6. That there was no parol agreement between the plaintiff and Mrs. Schmitz, or her husband and agent, touching the purpose of the restriction in her deed, when the lot was bought, or when the deed was accepted.

7. [That the four or five acre pasture lot, and the homestead and curtilage, or Dr. Hamilton lot, on which the plaintiff had caused a well to be drilled and was preparing to drill another well at the time this suit was brought, were not in the plan of

---

* See Yost v. Mensch, 141 Pa. 73, 84.

Master's Report.

lots laid out by the plaintiff; were not numbered, and were not for sale, and were not subject to the condition set out in the second finding, supra.] [12]

8. That the defendants had drilled, an oil well on Mrs. Schmitz' lot, in violation of the restriction contained in her deed, and had commenced it before this bill was filed.

9. That the plaintiff drilled or caused to be drilled on the southwestern part of the addition, on lots not sold by him, three wells; but these wells were drilled after the well on the Schmitz lot had been drilled by the defendants, and after this suit had been commenced.

Upon questions of law involved, the master held that the restriction in the plaintiff's deed to Mrs. Schmitz did not amount to a reservation of the oil and gas in the lot conveyed, as was claimed by the plaintiff, but was merely a restriction of the right of enjoyment: Kister v. Reeser, 98 Pa. 5; Whitaker v. Brown, 46 Pa. 198; Shep. Touch., * 89; Klaer v. Ridgway, 86 Pa. 534; Caldwell v. Fulton, 31 Pa. 479; that the defendants' well, which, as admitted in the answer had produced 2991 barrels of oil, was drilled in violation of the restriction in the deed to Mrs. Schmitz; that, considering Kerr on Inj., 430, the plaintiff had not by his own conduct deprived himself of the right to relief by injunction, as the restriction was lawful, and equity would restrain its violation: High on .Inj., §§ 502, 1135; Steward v. Winters, 4 Sandf. Ch. 587; Clark v. Martin, 49 Pa. 289; Brush Elec. Co.'s App., 114 Pa. 584; Bierbower's App., 107 Pa. 14; 2 Story's Eq., § 901; Bitting's App., 105 Pa. 517, 520; Vollmer's App., 61 Pa. 118; Milne's App., 81 Pa. 54; and that the remedy at law was inadequate. The report then concluded:

The next question, is concerning the damages the plaintiff is entitled to receive for the injury sustained by him by reason of the drilling of the well by the defendants on the Schmitz lot, in violation of the restriction in Mrs. Schmitz' deed.

The plaintiff in his bill asks for an account as well as an injunction. "To prevent multiplicity of suits, the court will decree an account of the damages or waste done, at the same time with an injunction, and proceed to make a complete decree, so as to settle the entire controversy between the parties.

Master's Report.

This is the doctrine, not only of courts of equity having general chancery jurisdiction, but of this court, under the equitable powers conferred by the legislature:" Allison's App., 77 Pa. 227.

The measure of damages would be the amount and value of the oil which the defendants' well drained from the plaintiff's lands, in the immediate vicinity of their well. It is utterly impossible to ascertain what amount of oil was so drained from the plaintiff's land. There is no rule or criterion by which it can be certainly done. As no better method has been suggested or pointed out, the master will exercise his best judgment upon all the evidence in the case, the testimony of experienced oil men, the situation of the Schmitz well in reference to the Gibson & Giles well and other wells in the neighborhood, its situation in relation to the lands of the plaintiff, and how the oil in such lands might be drained by the defendants' well.

Whether the plaintiff could have obtained the oil in the Schmitz lot by drilling on the pasture lot leased to Gibson & Giles or not, has no bearing upon the question of damages, because the master has already decided that the oil and gas in the Schmitz lot passed to Mrs. Schmitz under her deed and did not remain in the grantor. The master has also decided, that the title to the oil and gas in the other lots sold in the addition, the deeds for which contained substantially the same restriction that is in Mrs. Schmitz' deed, passed to the grantees out of the grantor. This being the case, the plaintiff could not be affected by the drainage from these lots, or from the lots conveyed to other parties before the addition was laid out. He would only be entitled to damages for the oil drained from the lands owned by him at the time the defendants' well was drilled.

The testimony of experienced oil men is that the drainage as a rule would be greatest in the direction of the best producing territory in the immediate vicinity; but the distance a well will drain the surrounding territory, depends upon the pressure of the gas and the character of the oil-producing sand; that in good territory, one well is allowed to every five acres; that one well is affected by other wells one hundred and seventy-five feet and more apart; and that a big well in rich producing territory, in the vicinity of another big well in the same pool,

would be affected more, soon after it came in, than after the first well has failed in its production; that if time were given, one well would drain more than five acres; and that the drilling of the Schmitz well would have a tendency to drain the land of the plaintiff.

The evidence shows that the Acheson-Andrews well is located from one hundred and fifty to two hundred feet from the Schmitz well; the Gibson & Giles about one hundred and seventy-five feet, and the Sherrard well about one hundred and seventy-five feet from the Schmitz well.

From the testimony in the case, in connection with the plot, it appears that the oil in the lots fronting on Prospect Avenue, from the Schmitz lot, No. 6, through the lot of M. C. Acheson, Esq., by a distance of nearly four hundred feet, and extending back one hundred and ninety-eight feet from the avenue, did not belong to the plaintiff; nor did the oil in the lots conveyed to Darrah, Dr. Woods, Baker, Mrs. Brownson, J. I. Brownson, Jr., and Prof. McClelland.

There had been a well drilled on the Sherrard lot just across Prospect Avenue, about one hundred and seventy-five feet northwest of the Schmitz well, before the last named well was started, which produced two hundred barrels of oil the first twenty-four hours, and in less than a week declined to less than one hundred barrels a day.

From the evidence, it is reasonable to suppose that the Schmitz well drained from all the above-mentioned lots; from the Sherrard lot and territory contiguous to it, and especially from the direction of the Acheson-Andrews well, the greatest producer in that pool. Some oil, no doubt, was drained from the pasture lot, where the Gibson & Giles well is located, but there is no testimony in the case to show that the production of that well diminished immediately after the Schmitz well came in, so that the amount of drainage from that direction must have been slight. But the master is satisfied from the evidence that there was drainage from the plaintiff's lands, to the extent of six hundred barrels of oil, about one fifth of the entire production of the defendants' well. It is admitted that the average price per barrel was $1.22. Six hundred barrels, at $1.22 per barrel, would amount to the sum of $732.

The defendants claim that the cost of the production of the

oil in their well, should be considered in determining the amount of damages. To do so, would be equivalent to saying that a wrongdoer is to be reimbursed for his labor and expenses in taking property which did not belong to him, and against the wishes of the owner. In Allison's App., 77 Pa. 221, the master reported as damages one half of the production of an oil well, drilled upon "protection" territory in a lease in violation of its terms, without allowing any deduction whatever for the cost of production, and the Supreme Court affirmed the master's finding.

The master is of the opinion that the defendants are not entitled to any deduction on account of the cost of production, but that they should pay to the plaintiff the sum of $732, the amount of damages he has sustained by their violation of the restriction in the deed to Mrs. Schmitz; that an injunction should be granted as prayed for, and that the defendants should pay the costs of this proceeding; and the master would recommend a decree to that effect to be made by the court in the form following:

[And now———1890, this cause came on to be further heard; and thereupon, upon consideration thereof, it is ordered, adjudged and decreed: (1) That a perpetual injunction may be issued to restrain the defendants from further operations, drilling, or mining for oil or gas, and from producing the same on the lot conveyed to Mrs. Effie B. Schmitz by the plaintiff, etc. (2) That the defendants pay the plaintiff the sum of $732, the amount of damages sustained by him on account of their violation of the restriction in the deed to Mrs. Schmitz; and (3), that the defendants pay the costs of this proceeding.] [4a]

—To the master's report the plaintiff filed four exceptions, three of them to findings of fact, and the other alleging that the master erred:

4. In not finding, as a conclusion of law, that under the deed to Mrs. Schmitz the oil and gas were reserved by the plaintiff, and did not pass to the grantee.

The defendants filed twenty-two exceptions, some to rulings on questions of evidence, others to findings of fact, and others alleging that the master erred:

12. In holding that the defendants had violated the provisions of the restriction by drilling an oil well on the Schmitz lot.[9]

Opinion of Court below.

14. In holding that the plaintiff had not deprived himself of the relief prayed for.[10]

On September 18, 1890, the death of the plaintiff on July 10, 1890, was suggested, and M. C. and E. F. Acheson, his executors, were substituted.

Said exceptions having been argued, the court, McILVAINE, P. J., on March 23, 1891, filed an opinion, which, after summarizing the averments of the bill and answer, proceeded:

### THE CONTENTION IS

1. Whether the grantor in the Mrs. Schmitz deed, reserved or excepted the oil and gas in the lot conveyed to her.

2. Whether the purpose of the restrictive clause in her deed, as placed there by the grantor, was for the purpose of protecting his remaining lands *outside*, from being drained by operations upon the lots *within* the plan of Acheson's addition, in case oil or gas should be found.

3. Whether the wells which the plaintiff had drilled and was preparing to drill, at the time this suit was instituted, were on lots which were outside of the addition; and

4. Whether the plaintiff had been dämaged so as to be entitled to an account, and if so, to what extent was he damaged.

The plaintiff affirmed each one of these propositions and the defendants denied them.

### FINDINGS OF FACT:

The master has found the following facts from the evidence, and after a careful examination we are not convinced that he has committed an error in any of these findings: [See ante, 232.]

### CONCLUSIONS:

From these findings of fact, it appears that the plaintiff has failed to establish two of the material allegations of his bill: (1) That the right and title to all the oil and gas found in the Schmitz lot was in him; and (2) that the purpose of the restriction in the Mrs. Schmitz deed was to protect his remaining lands from being drained by operations on small lots of ground sold by him, in case oil or gas should be found upon the said land.

With the issue raised on these allegations found against the plaintiff, is he entitled to the equitable relief prayed for?

Opinion of Court below.

He is surely not entitled to an account for the oil taken out of the Schmitz lot, because, under the grant to Mrs. Schmitz, it belongs to the defendants and not to the plaintiff. He is not entitled to the oil drained from his other lands, for the master has found that the purpose of the restriction in Mrs. Schmitz's deed was not for the purpose of protecting these lands from drainage by a well on this lot. Oil is a mineral feræ naturæ, and is part of the land and belongs to its owner only so long as it is in the land and under his control; and, as soon as the oil left the land of the plaintiff and flowed on or into the lot of Mrs. Schmitz, it belonged to her, unless some contract or covenant existed between the plaintiff and her by which this rule of property in oil in situ was inoperative. The master has found that there was no such contract between them. We must therefore conclude that the plaintiff is not entitled to damages for the oil taken out of the Schmitz well or any part of it.

That the plaintiff is not entitled to the damages given him by the master, will more fully appear when we consider the leases which he made with Gibson & Giles, exhibits B. and C. By the terms of these leases, the exclusive privilege of operating for oil on the four or five acre lot, close to the Schmitz well, was in these lessees. They had completed a well on the leasehold which was producing; and the oil in situ was in their possession, and when brought to the surface and placed in the pipe lines, one eighth belonged to the plaintiff and seven eighths to them. When Gibson & Giles had drilled their well to the oil-producing sand, and it began to flow, they from that moment were in possession of all the oil in the land covered by their lease; and if the six hundred barrels of oil, which the master found the Schmitz well captured from territory belonging to the plaintiff, had been captured and brought to the surface by Gibson & Giles, the plaintiff in the pipe line would have gotten only one eighth thereof. In other words, the oil in place belonged to Gibson & Giles, and in the pipe lines they owned seven times as much of it as the plaintiff. If Gibson & Giles owned all the oil drained from this lot, then they should have been the plaintiffs, so far as any damage to it is concerned. If the oil drained belonged to them and the lessor jointly, then Gibson and Giles are necessary parties in any action to compel an account for the oil taken.

But, if the plaintiff is not entitled to the relief asked for in his fourth prayer, is he entitled to relief under any of the other prayers?

There is no doubt that the plaintiff's primary object in instituting this suit was to restrain what he conceived to be an interference with his oil and gas right, or interest. And having failed in this, it might be claimed that, under the authority of Morio's App., 4 Penny. 398, we should dismiss the plaintiff's bill. But, we think there is still enough in the bill to entitle the plaintiff to equitable relief, under the facts found and which appear from the evidence in the case.

It is alleged in the bill that the plaintiff is the proprietor of a plan of lots; that thirteen of these have been sold; that one was sold to Mrs. Effie B. Schmitz, one of the defendants, with a restriction in her deed that she was not to drill for oil or gas in the lot; that this restriction was in all the deeds delivered to other purchasers of lots; that the defendants in violation of this restriction were drilling an oil well on Mrs. Schmitz' lot; that this restriction was of value to the plaintiff, and that the drilling of the well "would do great and irreparable injury to his rights and property." He prays that the defendants may be restrained from "further operating, drilling or mining for oil or gas," and that he "be granted further and other relief as in the premises may be just and equitable."

The master finds that there were forty-three lots in the plan referred to in the bill, and that fourteen had been sold, and that plaintiff still owns the remainder; that the plaintiff made it a "general condition in the sale of lots in the Acheson addition, when put upon the market, that no oil or gas wells should be drilled upon any of the lots for sale in the addition, either by himself or the lot owners;" that the drilling of oil wells on the Acheson addition made it less desirable as a place of residence, and would depreciate the value of the lots during the continuance of the wells," and that the restriction in the deed to Mrs. Schmitz had been violated by the defendants, and that the counter equity which is set up in the defendants' answer, was not established by the proofs. This brings the case clearly within the rule laid down in High on Inj., § 1155; Steward v. Winters, 4 Sandf. Ch. 587; Whitney v. Union Ry., 11 Gray 363; Clark v. Martin, 49 Pa. 289; St. Andrew's Church's App., 67 Pa. 515.

Arguments.

[The fact that the plaintiff has failed to show, by his testimony in the case, that he has suffered any actual damage in dollars and cents by the depreciation of his other lots, makes no difference. He has shown generally, and the master so finds, that the drilling of the oil well on the Schmitz lot made the plaintiff's unsold lots less desirable places of residence, and would depreciate their value while the well continued to be operated. On the whole case, we think the plaintiff is entitled under his prayers of relief, to a perpetual injunction and costs, but to nothing more.] [13]

[And now, March 23, 1891, this cause came on to be further heard and was argued by counsel; whereupon, it is ordered, adjudged, and decreed that the defendants be perpetually enjoined and restrained from operating or producing oil or gas upon the lot conveyed by A. W. Acheson to Effie B. Schmitz, and that the defendants pay the costs of this proceeding.] [14]

—Thereupon, the defendants took the appeal to No. 123, specifying inter alia, that the court erred :

9, 10. In not sustaining defendants' exceptions.[9][10]

12. In approving the finding of fact embraced in [ ] .[12]

13. In the conclusion of law embraced in [ ] [13]

14. In entering the decree embraced in [ ] [14]

The plaintiff's executors took the appeal to No. 270, specifying inter alia, that the court erred :

4. In not entering the decree recommended by the master.[4a]

*Mr. David Sterrett* (with him *Mr. M. H. Stevenson*), for the defendants, appellants and appellees.

That the clause in the deed did not create a valid easement in favor of the plaintiff in the lot conveyed, counsel cited: 2 Washb. on R. P., 25; Dark v. Johnston, 55 Pa. 164; Peck v. Conway, 119 Mass. 546; Huff v. McCauley, 53 Pa. 210. That equity would no more enforce every restriction that could be devised, than the common law would recognize, as creating an easement, every grant purporting to limit the use of land in favor of other lands: Badger v. Boardman, 16 Gray 559; Jewell v. Lee, 14 Allen 145; Skinner v. Sheppard, 13 Mass. 180. That a trespass of such a nature as to contemplate a permanent occupation and use of plaintiff's property, must be proved: Masson's App., 70 Pa. 26; Allison's App., 77 Pa. 221;

Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235; and the measure of damages adopted by the master was erroneous: Oak Ridge Coal Co. v. Rogers, 108 Pa. 147; Eby v. Schumacher, 29 Pa. 40; Schmertz v. Dwyer, 53 Pa. 335; Fulmer's App., 128 Pa. 24. On the whole case, the defendants had the right to depart the court: Ahl's App., 129 Pa. 49, 61.

*Mr. R. W. Irwin* (with him *Mr. J. W. Donnan* and *Mr. A. Donnan*), for the plaintiff's executors, appellants and appellees.

Counsel cited: Allison's App., 77 Pa. 227; Clark v. Martin, 49 Pa. 289; High on Inj., § 135; Steward v. Winters, 4 Sandf. Ch. 587; High on Inj., § 1153; Seymour v. McDonald, 4 Sandf. Ch. 502; Trustee v. Cowan, 4 Paige 510; Hills v. Miller, 3 Paige 254 (24 Am. Dec. 218); Lattimore v. Livermore, 72 N. Y. 174.

## NO. 123.

PER CURIAM:

Everything necessary to a full understanding of this contention is contained in the clear and concise report of the learned master, and in the opinion of the court below. In the latter, the learned president of the Common Pleas has very carefully considered and correctly disposed of all the questions presented. The decree complained of requires no further vindication, and it is accordingly affirmed on his opinion.

> Decree affirmed and appeal dismissed, with costs to be paid by appellants.

## NO. 270.

PER CURIAM:

The learned master came to the conclusion that, by reason of defendants' violation of the restriction contained in the deed to Mrs. Schmitz, the plaintiff was damaged to the extent of seven hundred and thirty-two dollars; and, in the form of decree recommended by him, he accordingly inserted a clause requiring them to pay that sum to the plaintiff. The court, having reached a different conclusion, refused to decree the payment of any damages, and hence this appeal.

After referring to the allegations of the bill, and reciting the master's findings of fact, the learned judge says:

" From these findings of fact, it appears that the plaintiff has

failed to establish two of the material allegations of his bill; (1) That the right and title to all the oil and gas found in the Schmitz lot was in him; and (2) that the purpose of the restriction in the Mrs. Schmitz deed was to protect his remaining lands from being drained by operations on small lots of ground sold by him, in case oil or gas should be found upon the said land."

In view of plaintiff's failure to establish these allegations, the court held that he was not entitled to an account for the oil taken out of the Schmitz lot, because, under his deed to Mrs. Schmitz, it belonged to defendants, and not to him. Nor was he entitled to an account for the oil drained from his other lands, because, as the master found, the restriction in the Schmitz deed was not for the purpose of protecting those lands from drainage by a well on the Schmitz lot. For these and other reasons, which fully appear in the opinion of the court, we think there was no error in holding that appellants were not entitled to a decree for the damages claimed.

Decree affirmed, and appeal dismissed; the costs of this appeal to be paid by appellants.